Presentment Date and Time:
**December 19, 2014**
**at 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In Re:                                                                           **Case No. 14-22064**

    **Horacio F. Amieiro and Andrea T. Amieiro**                    **Chapter 13**

        Debtors.

-------------------------------------------------------------X


**NOTICE OF PRESENTMENT OF ORDER APPROVING MORTGAGE MODIFICATION
PURSUANT TO FRBP 9019 AND GENERAL ORDER M-364**

    **PLEASE TAKE NOTICE** that upon the annexed motion of **Horacio F. Amieiro and Andrea T. Amieiro**, the undersigned will present the attached proposed Order to the Honorable Robert D. Drain, United States Bankruptcy Judge, for signature on **December 19, 2014 at 10:00 a.m.**

    **PLEASE TAKE FURTHER NOTICE** that unless written objection to the proposed Order, with proof of service, is filed with the Clerk of the Court and a courtesy copy is delivered to the Bankruptcy Judge's chambers at least three (3) days before the date of presentment, there will not be a hearing and the Order may be signed.

    **PLEASE TAKE FURTHER NOTICE** that if a written objection is timely filed, the Court will notify the moving and objecting parties of the date and time of the hearing and of the moving party's obligation to notify all other parties entitled to receive notice.  The moving and objecting parties are required to attend the hearing, and failure to attend in person or by counsel may result in relief being granted or denied upon default.

Dated: December 15, 2014
      Nyack, New York

                                      Respectfully submitted,
                                      **Adams Law Group LLC**
                                      *Attorneys for the Debtors*

By:     /s/ Benjamin M. Adams
                                    Benjamin M. Adams, Esq.
                                    145 Main Street, 2nd Floor
                                    Nyack, New York 10960
                                    Telephone: (845) 371-5930

TO:

Jeffrey L. Sapir, Trustee
399 Knollwood Road - Suite 102
White Plains, New York 10603

Ocwen Loan Servicing LLC
3451 Hammond Avenue
P.O. Box 780
Waterloo, IA 50704-0780

Ocwen Loan Servicing, LLC
Attn: Customer Service Dept.
P.O. Box 780
Waterloo, IA 50704-0780

OneWest Bank
6900 Beatrice Drive
Kalamazoo, MI 49009-9559

OneWest Bank FSB
P.O. Box 7056
Pasadena, CA 91109-9699

Charles A. Higgs, Esq.
McCabe, Weisberg and Conway, P.C.
145 Hugenot Street, Suite 210
New Rochelle, New York 10801

Ocwen Loan Servicing, LLC
Attention:  Bankruptcy Department
1100 Virginia Drive, Suite 175
Fort Washington, PA 10934

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In Re:

      **Horacio F. Amieiro & Andrea T. Amieiro**

          Debtors.

------------------------------------------------------------X

**Case No. 14-22064**

**Chapter 13**

### DECLARATION OF BENJAMIN M. ADAMS IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING MORTGAGE MODIFICATION AGREEMENT BETWEEN THE DEBTORS AND OCWEN LOAN SERVICING, INC.

TO:   **THE HONORABLE ROBERT D. DRAIN**
       **UNITED STATES BANKRUPTCY JUDGE**

      Benjamin M. Adams, Esq., an attorney at law duly admitted to practice before this Court

and the courts of the State of New York, hereby declares the following to be true under penalty

of perjury:

1. I represent the Debtors, **Horacio F. Amieiro and Andrea T. Amieiro** ("Debtors") in this
   bankruptcy case and am fully familiar with the facts and circumstances recited herein.

2. Debtors own the residence located at 146 West Washington Avenue, Pearl River, New
   York 10965 ("Premises.")

3. I submit this Declaration in Support of the Debtors' Motion (the "Motion") pursuant to
   Rule 9019 of the Federal Rules of Bankruptcy Procedure for approval of the proposed
   Modification (hereinafter "Modification") between the Debtors and Ocwen Loan
   Servicing, LLC. ("Ocwen.")  A true copy of the Final Modification is attached as **Exhibit**

1

"A."

4.  Ocwen currently holds a secured first mortgage ("Mortgage") recorded in the Office of

the Rockland County Clerk more particularly described as follows:

**Mortgage given by Horacio F. Amieiro to Mortgage Electronic Registration Systems, Inc. as nominee for IndyMac Bank, F.S.B dated 8/23/2004, in the amount of $239,000.00 and recorded on 12/10/2004, in the Rockland County Clerk's Office under Instrument #2004-00077235. Said mortgage was assigned by Mortgage Electronic Registration Systems, Inc. as nominee for IndyMac Bank, F.S.B to OneWest Bank, FSB by Assignment dated 6/2/2010 and recorded on 6/11/2010 as Instrument #2010-00020743. Said Assignment was further assigned by OneWest Bank, FSB to Ocwen Loan Servicing, LLC dated 9/5/2013 and recorded on 10/2/2013 as Instrument #2013-00036544.**

5.  The Debtors subsequently fell into default on their payments on the Mortgage.

6.  The Modification is the successful result of the participation of the Debtors and Ocwen in

the Court's Loss Mitigation Program.

7.  Under the terms of the Modification, Debtors will be current on their Mortgage so that

their home is no longer at risk of foreclosure.

8.  Additionally, the Modification substantially benefits the Debtors and Ocwen.  The

Debtors will benefit by obtaining the following: (a) a reduced monthly mortgage

payment, (b) a lowered interest rate, (c) a potential extension of the term of the Mortgage,

and/or, (d) a potential deferral or reduction of interest on a significant portion of the

principal to the end of the mortgage term.

9.  Ocwen will derive the following benefits from the Modification: (a) the reinstatement of

an income stream on a defaulted loan, and, (b) the potential of realizing full payment on a

loan that would otherwise incur a significant loss if the home were to be sold in a

foreclosure sale or short sale due to the substantial decrease in market values on

residential homes.

10. For all the foregoing reasons, approval of the Modification results in a benefit to all parties concerned, and Debtors respectfully request that an Order be entered:

(a)     authorizing the Debtors and Ocwen to enter into the Modification on the terms contained in said Modification;

(b)     vacating the automatic stay solely to the extent necessary to effectuate the terms and recordation of the Modification authorized by this Order;

(c)     permitting the recordation of this Order and/or the Modification agreement authorized by this Order with the Rockland County Clerk;

(d)     retaining jurisdiction over any dispute arising from or in connection with this Order; and,

(e)     for such other and further relief as to the Court may seem just and proper.


Dated: December 15, 2014
       Nyack, New York

                                        Respectfully submitted,

                                        **Adams Law Group LLC**
                                        *Attorneys for the Debtors*

                            By:     __/s/ Benjamin M. Adams___
                                        Benjamin M. Adams, Esq.
                                        145 Main Street, 2nd Floor
                                        Nyack, New York 10960
                                        Telephone: (845) 371-5930

3

EXHIBIT "A"

○
O C W E N

Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!*™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

12/11/2014

**Loan Number:** 7195624395

Horacio F Amieiro
146 W Washington Ave
Pearl River, NY 10965

**Property Address:**
146 W Washington Ave Pearl River, NY 10965

**Congratulations!** You are eligible for a Home Affordable Modification.  As previously described, if you comply with the terms of the Home Affordable Modification Trial Period Plan, we will modify your mortgage loan and waive all prior late charges that remain unpaid.

The enclosed Home Affordable Modification Agreement ("Modification Agreement") reflects the proposed terms of your modified mortgage.

**How to Accept This Offer:**

**STEP1**    **COMPLETE THE ENCLOSED AGREEMENT**

To accept this offer, <u>you must sign and return both copies</u> of the Modification Agreement to us before 12/27/2014. If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us.  We encourage you to <u>make a copy</u> of all documents for your records.  If you do not send both signed copies of the Modification Agreement by the above date, you must contact us if you still wish to be considered for this program and have your loan modified.

**STEP2**    **MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME**

Your trial period payments in the amount of  $000.00 will be due on or before the dates provided within the Trial Period Plan. <u>Be certain to make all trial period payments on or before their dates</u>. If the trial period payments are made after their due dates or in amounts different from the amount required, your loan may not be modified. . To ensure that your payments are made on time, please consider enrolling in our free Automatic Clearing House (ACH) program. The ACH program allows you to make automatic monthly payment withdrawals without writing any checks. You can fill out the ACH application included with this agreement or simply log in to your account online at <u>www.ocwencustomers.com</u> with your User ID and Password and click on the Automatic Payment Withdrawal link.

---

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally.*

*FB_Tier1_v2.0*
228047
NMLS # 1852

OCWEN

Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!*™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

---

## STEP 3   RETURN BOTH COPIES OF MODIFICATION AGREEMENT

**MAIL TO:**
OCWEN LOAN SERVICING, LLC
ATTN: HAMP MODIFICATIONS
1661 WORTHINGTON ROAD, SUITE 100
WEST PALM BEACH, FLORIDA 33409

To understand the proposed terms of your modified mortgage, we urge you to read the attached summary of your modified mortgage and the Agreement.

***Regarding Bankruptcy:*** Please be advised that if you are part of an active Bankruptcy case or if you have received an Order of Discharge from a Bankruptcy Court, this letter is in no way an attempt to collect either a pre-petition, post petition or discharged debt. If your bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay. If you have received an Order of Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from you personally. Finally, if you are in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your plan.

MICHELLE CRIPPEN has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,

Ocwen Loan Servicing, LLC

---

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

*FB_Tier1_v2.0*
228047
NMLS # 1852



Ocwen Loan Servicing, LLC
Pg 9 of 29
WWW.OCWEN.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

---

**SUMMARY**    Here is a summary of your modified mortgage.

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement.

**DEFERRAL OF PRINCIPAL.** To further reduce your mortgage payment, we will defer collection of and not collect interest on $971.87 of your outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. Ocwen will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that Ocwen must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be included in the loan payment noted in the enclosed Agreement; you do not need to remit this amount separately.

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3 showing your payment plan for the life of your modified loan after the trial period.

**NO FEES.** There are no fees under the Home Affordable Modification Program.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us at 1 (800) 746-2936.

**BORROWER INCENTIVE. [ONLY APPLIES IF ALL CONDITIONS BELOW HAVE BEEN SATISFIED]** If you make your monthly mortgage payments on time, you will accrue a monthly benefit equal to the lesser of: (i) $83.33 or (ii) one-half of the reduction in the monthly mortgage payment. As long as your mortgage loan does not become 90 days delinquent, we will apply your accrued monthly benefit to your mortgage loan and reduce your principal balance after each of the first through fifth anniversaries of the month in which the trial period plan is executed. If your modified mortgage loan ever becomes 90 days delinquent, you will lose all accrued but unapplied principal reduction benefits and will no longer be eligible to accrue additional principal reduction benefits even if the mortgage loan is later brought current.

**AGREEMENT.** You must return two signed original Modification Agreements to Ocwen by the due date provided in Step 1.

---

## MAIL AGREEMENTS TO:
## OCWEN LOAN SERVICING, LLC
## ATTN: HAMP MODIFICATIONS
## 1661 WORTHINGTON ROAD, SUITE 100
## WEST PALM BEACH, FLORIDA 33409

---

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



Homeowner's HOPE™ Hotline

If you have questions about the program that your servicer cannot answer or need further counseling, call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline can help with questions about the program and offers access to free HUD-certified counseling services in English and Spanish.





## NOTICE TO BORROWERS

Be advised that you are signing the following documents under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy in your home, hardship circumstances, and/or income will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution.

By signing the enclosed documents you certify, represent and agree that:

"Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the program, are true and correct."

## SIGTARP Hotline

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by:

Online Form: www.SIGTARP.gov
Phone: 877-SIG-2009 (toll-free)
Fax: 202-622-4559
Mail to: Hotline
Office of the Special Inspector General For The Troubled Asset Relief Program 1500 Pennsylvania Ave., NW, Suite 1064 Washington, D.C. 20220

For all other inquiries related to your mortgage, please contact your Lender

*FB_Tier1_v2.0*

Investor Loan # _____

**After Recording Return To:**

_____
_____
_____
_____

This document was prepared by _____

_____**[Space Above This Line For Recording Data]**_____

HOME AFFORDABLE MODIFICATION AGREEMENT

## **(Step Two of Two-Step Documentation Process)**

Borrower(s) ("I"): **Horacio F Amieiro**

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): **8/27/2004**

Loan Number: **7195624395**

Property Address: **146 W Washington Ave Pearl River, NY 10965** ("Property")

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations.** I certify, represent to Servicer and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Servicer in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Servicer requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and

*FB_Tier1_v2.0*
228047
*NMLS # 1852*

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.    TIME IS OF THE ESSENCE under this Agreement;

    B.    If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents; and

    C.    I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 12/1/2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 12/1/2014.

    A.    The new Maturity Date will be: 11/1/2054, at which time a final balloon payment in an amount equal to all remaining amounts owed under the Loan Documents will be due.

    B.    The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $266,738.67 (the "New Principal Balance").

    C.    $971.87 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $265,766.80. Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 11/1/2014 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 12/1/2014. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|-----------------------|-------------------|----------------------------|
| 1-5 | 2.00000% | 11/1/2014 | $804.81 | $740.54, adjusts annually after year 1 | $1,545.35, adjusts annually after year 1 | 12/1/2014 | 60 |
| 6 | 3.00000% | 11/1/2019 | $935.00 | Adjusts Annually | Adjusts Annually | 12/1/2019 | 12 |
| 7-Loans Maturity | 3.87500% | 11/1/2020 | $1,054.72 | Adjusts Annually | Adjusts Annually | 12/1/2020 | 408 |
| - | - | - | - | - | - | - | - |
| - | - | - | - | - | - | - | - |

    *The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

    The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step or simple interest rate.

    D.    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

    E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

*FB_Tier1_v2.0*
228047
*NMLS # 1852*

F.  I agree to pay in full (1) the Deferred Principal Balance (deferred principal balance will be treated as a non-interest bearing principal forbearance.  I will not pay interest or make monthly payments on the deferred principal balance.), if any, and (2) any other amounts still owed under the Loan Documents, by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance (The new principal balance less the deferred principal balance shall be referred to as the "interest bearing principal balance), or (iii) the new Maturity Date.

G.  If I make a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.  **Additional Agreements**.  I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  Funds for Escrow Items.  I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items."  I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D.  I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents.  If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount.  Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA.  Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds.  Servicer and I can agree in writing, however, that interest shall be paid on the Funds.  Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

FB_Tier1_v2.0
228047
NMLS # 1852

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E.    That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F.    That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.    That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.    That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows:  If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer.  If Servicer exercises this option, Servicer shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I.    That, as of the Modification Effective Date, I understand that the Servicer will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan.  Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J.    If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

K.    That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void.

L.    Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error.  Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents.

M.    Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026  Flint, MI 48501-2026, (888) 679-MERS.  In cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns) with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law or custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling the mortgage loan.

N.    That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

*FB_Tier1_v2.0*
228047
*NMLS # 1852*

☐ *If this box is checked, Borrower(s) signature must be notarized.*

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here  _____    _____/_____/_____ Date
                   Horacio F Amieiro

State of <u>New York</u>)

County of _____)

On _____ before    me,    _____personally    appeared
_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in
his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the
person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of New York that the foregoing paragraph is true and
correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

---

Sign Here  _____    _____/_____/_____ Date

State of <u>New York</u>)

County of _____)

On _____ before    me,    _____personally    appeared
_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in
his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the
person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of New York that the foregoing paragraph is true and
correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

*FB_Tier1_v2.0*
228047
NMLS # 1852

**\*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 6 blank and return it with the rest of the agreement.**

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here          _____          _____/_____/_____   Date

State of <u>New York</u>)

County of _____)

On _____ before me, _____personally    appeared
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of New York that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

---

Sign Here          _____          _____/_____/_____   Date

State of <u>New York</u>)

County of _____)

On _____ before me, _____personally    appeared
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of New York that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

---

_____
Servicer                                      BY _____

_____
Date
If applicable: _____
      Mortgage Electronic Registration Systems, Inc.   Nominee for Servicer

*FB_Tier1_v2.0*
228047
*NMLS # 1852*

## BALLOON PAYMENT DISCLOSURE

Borrower(s) ("I"): Horacio F Amieiro

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 8/27/2004

Loan Number: 7195624395

Property Address: 146 W Washington Ave Pearl River, NY 10965

THIS BALLOON PAYMENT DISCLOSURE is made this 11 day of December, 2014, and is incorporated into and shall be deemed to supplement the Loan Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon payment provision representing the amount of the Deferred Principal Balance under the Agreement.

A balloon payment is a scheduled lump sum usually due at the end of the mortgage loan term that is significantly larger than the other regularly scheduled periodic payments. This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. The amount of the balloon payment may vary depending on my payment history. If my loan is an adjustable rate mortgage, the amount of the balloon payment also may vary based on any interest rate changes that occur during the life of the loan.

THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS:  AN INSTALLMENT OF    $971.87 WILL BE DUE AND PAYABLE IN FULL ON 11/1/2054, PROVIDED THAT ALL PAYMENTS ARE MADE IN ACCORDANCE WITH THE LOAN TERMS AND THE INTEREST RATE DOES NOT CHANGE FOR THE ENTIRE LOAN TERM.   The balloon payment on the loan modification I have applied for is due 480 months from the effective date of the modification.

*Notice required by North Dakota law:*

**CAUTION TO BORROWER:  IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN.  KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN MODIFICATION THAT YOU OBTAIN AT THIS TIME.**

If I cannot pay the balloon payment when due, I may have to obtain a new loan to make the balloon payment or I may lose my property through foreclosure. Before deciding to take this loan, I will consider my ability to pay the balloon payment when it comes due. In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

NEITHER OCWEN LOAN SERVICING, LLC NOR ANY LENDER TO WHICH THIS LOAN IS TRANSFERRED IS UNDER ANY OBLIGATION TO FINANCE THE AMOUNT OF THE BALLOON PAYMENT. THEREFORE, I MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS I OWN OR I MAY HAVE TO FIND ANOTHER LENDER TO REFINANCE THE LOAN.

*FB_Tier1_v2.0*
228047
*NMLS # 1852*

ASSUMING THE OWNER OF MY LOAN OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, I WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.  I MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

**\*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below.**

_____        _____
Borrower                                                  Date

_____        _____
Borrower                                                  Date

*FB_Tier1_v2.0*
228047
*NMLS # 1852*

Investor Loan # _____

**After Recording Return To:**

_____
_____
_____
_____

This document was prepared by _____

_____[Space Above This Line For Recording Data]_____

## HOME AFFORDABLE MODIFICATION AGREEMENT

# (Step Two of Two-Step Documentation Process)

Borrower(s) ("I"): **Horacio F Amieiro**

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): **8/27/2004**

Loan Number: **7195624395**

Property Address: **146 W Washington Ave Pearl River, NY 10965** ("Property")

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Servicer and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Servicer in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Servicer requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and

*FB_Tier1_v2.0*
228047
*NMLS # 1852*

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Agreement;

B. If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents; and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 12/1/2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 12/1/2014.

A. The new Maturity Date will be: 11/1/2054, at which time a final balloon payment in an amount equal to all remaining amounts owed under the Loan Documents will be due.

B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $266,738.67 (the "New Principal Balance").

C. $971.87 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $265,766.80. Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 11/1/2014 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 12/1/2014. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.00000% | 11/1/2014 | $804.81 | $740.54, adjusts annually after year 1 | $1,545.35, adjusts annually after year 1 | 12/1/2014 | 60 |
| 6 | 3.00000% | 11/1/2019 | $935.00 | Adjusts Annually | Adjusts Annually | 12/1/2019 | 12 |
| 7-Loans Maturity | 3.87500% | 11/1/2020 | $1,054.72 | Adjusts Annually | Adjusts Annually | 12/1/2020 | 408 |
| - | - | - | - | - | - | - | - |
| - | - | - | - | - | - | - | - |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step or simple interest rate.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

*FB_Tier1_v2.0*
228047
*NMLS # 1852*

F.  I agree to pay in full (1) the Deferred Principal Balance (deferred principal balance will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the deferred principal balance.), if any, and (2) any other amounts still owed under the Loan Documents, by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance (The new principal balance less the deferred principal balance shall be referred to as the "interest bearing principal balance), or (iii) the new Maturity Date.

G.  If I make a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.  **Additional Agreements**. I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  Funds for Escrow Items. I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount. Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

*FB_Tier1_v2.0*
228047
NMLS # 1852

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E.   That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F.   That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows:  If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer.  If Servicer exercises this option, Servicer shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I.   That, as of the Modification Effective Date, I understand that the Servicer will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3.  A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan.  Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J.   If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

K.   That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void.

L.   Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents.

M.   Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026  Flint, MI 48501-2026, (888) 679-MERS.  In cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns) with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law or custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling the mortgage loan.

N.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents."  I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

Page 4 of 8

*FB_Tier1_v2.0*
228047
*NMLS # 1852*

☐ *If this box is checked, Borrower(s) signature must be notarized.*

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here _____     _____/_____/_____ Date
                        Horacio F Amieiro

State of <u>New York</u>)
County of _____)
On _____ before me, _____personally     appeared
_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of New York that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

---

Sign Here _____     _____/_____/_____ Date

State of <u>New York</u>)
County of _____)
On _____ before me, _____personally     appeared
_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of New York that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

*FB_Tier1_v2.0*
228047
NMLS # 1852

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 6 blank and return it with the rest of the agreement.

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here          _____          _____/_____/_____   Date

State of <u>New York</u>)

County of _____)

On _____ before     me,     _____personally     appeared
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of New York that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

Sign Here          _____          _____/_____/_____   Date

State of <u>New York</u>)

County of _____)

On _____ before     me,     _____personally     appeared
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of New York that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

_____          _____
Servicer                                                                  BY
_____
Date
If applicable: _____
        Mortgage Electronic Registration Systems, Inc.   Nominee for Servicer

Page 6 of 8

*FB_Tier1_v2.0*
228047
*NMLS # 1852*

## BALLOON PAYMENT DISCLOSURE

Borrower(s) ("I"): Horacio F Amieiro

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 8/27/2004

Loan Number: 7195624395

Property Address: 146 W Washington Ave Pearl River, NY 10965

THIS BALLOON PAYMENT DISCLOSURE is made this 11 day of December, 2014, and is incorporated into and shall be deemed to supplement the Loan Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon payment provision representing the amount of the Deferred Principal Balance under the Agreement.

A balloon payment is a scheduled lump sum usually due at the end of the mortgage loan term that is significantly larger than the other regularly scheduled periodic payments. This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. The amount of the balloon payment may vary depending on my payment history. If my loan is an adjustable rate mortgage, the amount of the balloon payment also may vary based on any interest rate changes that occur during the life of the loan.

THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS:  AN INSTALLMENT OF   $971.87 WILL BE DUE AND PAYABLE IN FULL ON 11/1/2054, PROVIDED THAT ALL PAYMENTS ARE MADE IN ACCORDANCE WITH THE LOAN TERMS AND THE INTEREST RATE DOES NOT CHANGE FOR THE ENTIRE LOAN TERM.   The balloon payment on the loan modification I have applied for is due 480 months from the effective date of the modification.

*Notice required by North Dakota law:*

**CAUTION TO BORROWER:  IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN.  KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN MODIFICATION THAT YOU OBTAIN AT THIS TIME.**

If I cannot pay the balloon payment when due, I may have to obtain a new loan to make the balloon payment or I may lose my property through foreclosure. Before deciding to take this loan, I will consider my ability to pay the balloon payment when it comes due. In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

NEITHER OCWEN LOAN SERVICING, LLC NOR ANY LENDER TO WHICH THIS LOAN IS TRANSFERRED IS UNDER ANY OBLIGATION TO FINANCE THE AMOUNT OF THE BALLOON PAYMENT. THEREFORE, I MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS I OWN OR I MAY HAVE TO FIND ANOTHER LENDER TO REFINANCE THE LOAN.

*FB_Tier1_v2.0*
228047
*NMLS # 1852*

ASSUMING THE OWNER OF MY LOAN OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, I WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.  I MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

**\*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below.**

< SIGN

_____              _____
Borrower                                              Date

< SIGN

_____              _____
Borrower                                              Date

*FB_Tier1_v2.0*
*228047*
*NMLS # 1852*

7195624395
12/11/2014

Horacio F Amieiro
146 W Washington Ave
Pearl River, NY 10965


Loan Number:         7195624395
Property Address:    146 W Washington Ave Pearl River, NY 10965

Dear Borrower(s):

Thank you for expressing interest in Ocwen's Automatic Clearing House (ACH) program. ACH is the most convenient, economical and time effective way possible for you to make your monthly mortgage payment.

The many benefits of participating in the ACH program include:

1. Enjoying the confidence that your monthly mortgage payments will be made on time, resulting in positive credit reporting and no more late charges.
2. Avoiding the monthly inconvenience of writing checks and allowing sufficient time for the mail to be delivered.
3. Eliminating the cost of postage or alternate mail services.
4. Scheduling your ACH payment draft date to best suit your individual needs.
5. Avoiding the stress of long hold times to pay through an agent on peak days of the month and the premium cost associated with alternate payment methods.

If you have any questions about this beneficial program, you can reach our Customer Care Center at (800) 746-2936, Monday to Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm and Sunday 9:00 am to 9:00 pm ET.

Please complete the brief application below and submit it along with a voided check by mail or fax to:

**_Ocwen Loan Servicing, LLC_**
**_P.O. Box 24738_**
**_West Palm Beach, FL 33416-4738_**
**_Fax: (407) 737-6300_**

You will receive a confirmation letter for successful enrollment in the ACH program, which will clearly identify the date of your first scheduled ACH draft payment. Note that no changes can be made to the payment drafts within 3 business days before or after each scheduled draft date. Please note that if your application is received in our office after the date chosen below, your first draft will take place the following month. If your loan is not current at the time this application is received, we will not be able to process this application until such time that your loan is brought current. By submitting this application you authorize Ocwen to increase the withdrawal amount in the event that your monthly payment increases due to escrow and/or increases in your interest rate if applicable.

MICHELLE CRIPPEN has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,
Ocwen Loan Servicing, LLC

---

Loan Number: 7195624395
Mailing Address: _____
_____
Name of Debit Bank: _____
Account Number: _____
Bank Routing ID (ABA) Number: _____
Name of Account Holder _____

Name: Horacio F Amieiro
Draft from:    Savings    Checking
Draft Date*:    1st   5th   10th   15th   20th   25th   30th
*Draft must be within grace period or application will be rejected.

I would like additional funds drafted each month in the amount of _____ to be applied to my principal balance.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In Re:

       **Horacio F. Amieiro and Andrea T. Amieiro**

                Debtors.

----------------------------------------------------------X

**Case No. 14-22064**

**Chapter 13**

## ORDER APPROVING LOAN MODIFICATION AGREEMENT

UPON the motion, by Notice of Presentment dated **December 15, 2014,** (the "Motion"), of the above-captioned Debtors, **Horacio F. Amieiro and Andrea T. Amieiro** (the "Debtors"), by their attorney, Adams Law Group LLC by Benjamin M. Adams, Esq., seeking entry of an Order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and General Order M-413 approving the Debtors' entry into and performance of a proposed Modification ("Modification") between the Debtors and Ocwen Loan Servicing, LLC (Ocwen), a copy of which is attached as **Exhibit "A"** to the Motion; and there being due and sufficient notice of the Motion; and there being no opposition to the requested relief; and no additional notice of or a hearing on the Motion being required under the circumstances; and the Modification being fair and reasonable and in the best interests of the Debtors and their estate; and good and sufficient cause appearing, it is hereby

    **ORDERED**, that the Motion is granted; and it is further

    **ORDERED**, that the Debtors' entry into and performance of (a) the Modification, and, (b) any subsequent permanent modification of the loan and mortgage covered by the Modification that is on the same or better terms as the Modification are approved; and it is further

- 1

**ORDERED**, that the automatic stay is vacated solely to the extent necessary to effectuate the terms and recordation of the Modification and any subsequent permanent modification authorized by this Order; and it is further

**ORDERED**, that this Order, the Modification, and/or any subsequent permanent modification agreement authorized by this Order may be recorded with the Office of the Orange County Clerk; and it is further

**ORDERED**, that this Court shall retain jurisdiction with respect to all matters pertaining to this Order.